**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **NALCO COMPANY,**<br><br>　　**Plaintiff and<br>　　Counterclaim Defendant.**<br><br>　　　　v.<br><br>**DAVID T. CHEN,**<br><br>　　**Defendant and<br>　　Counterclaim Plaintiff,**<br><br>　　　　v.<br><br>**NALCO MOBOTEC, INC.**<br><br>　　**Counterclaim Defendant.** | **Case No. 12 C 9931**<br><br>**Hon. Harry D. Leinenweber** |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Plaintiffs/Counterclaim Defendants Nalco Company and Nalco Mobotec, Inc.'s (hereinafter, collectively, the "Nalco entities") Partial Motion to Dismiss Defendant/Counterclaim Plaintiff David T. Chen's Amended Counterclaim Pursuant to Rules 9(b) and 12(b)(6) [ECF No. 20] and Partial Motion to Dismiss Chen's Amended Counterclaim Pursuant to the Doctrine of *Forum Non Conveniens* [ECF No. 23]. For the reasons stated herein, the former is granted and the latter is denied.

### I.  BACKGROUND

In 2005, David T. Chen ("Chen") began working with Mobotec USA, Inc. ("Mobotec") on technology to improve air quality in China. The parties formed a joint venture in mid-2007 under Chinese law.

Mobotec owned fifty percent of the joint venture, Chen held forty percent and two non-party individuals each held five percent interests.

In late 2007, Nalco Company ("Nalco") acquired Mobotec.  As a result, Nalco received Mobotec's fifty percent interest in the joint venture, plus an additional five percent held previously by Mobotec's CEO.  The joint venture's name was changed to Nalco Mobotec Environmental Protection Technology (Shanghai) Co., Ltd. ("NMEPT").

Chen claims he agreed to invest in the joint venture based on technical guarantees made by Mobotec.  He states that Nalco representatives then reaffirmed such guarantees at NMEPT board meetings after Nalco acquired Mobotec.  The parties agreed to a First Amended and Restated Articles of Association on July 23, 2008 (the "2008 AOA"), replacing the previous AOA that existed between Mobotec and Chen.  Between 2007 and 2009, Chen secured projects with multiple clients worth a total of ¥150 million (approximately $24.2 million).

In 2009, Nalco requested the right to control the Board of Directors of NMEPT.  Chen alleges he agreed to the request based on Nalco President David Flitman's representation that Nalco "would 'always look out for the good' of NMEPT and its minority shareholders in any decision it made in the future."  Def.'s Answer & Ctrc. ¶21 at 15, ECF No. 18.  On February 10, 2010, the parties entered into a Second Amended and Restated Articles of Association (the "2010 AOA"), which gave Nalco appointment power and the right to cast a deciding vote in board meetings.

Chen alleges that the full value of the projects he secured for NMEPT were not realized due to "serious technical and managerial mistakes" made by Nalco. *Id*. ¶ 24 at 16. Consequently, NMEPT ran short of working capital and in January 2010, it took out a loan (the "Facility") from Citibank (China) Co., Ltd. ("Citibank"). Citibank required a parental guaranty (the "Guaranty") from Nalco to obtain the Facility, to which Nalco agreed. Nalco then requested Chen indemnify Nalco proportionately on the Facility based on his ownership share in NMEPT. Chen signed the Indemnification and Reimbursement Agreement, but claims he did so because of Nalco's representations they would continue to work on NMEPT's projects.

Subsequently, NMEPT defaulted on the Facility, requiring Nalco to pay Citibank the full amount due under the Guaranty. Nalco then demanded Chen pay the forty percent, plus interest, that he owed under the Indemnification Agreement. In response, Chen requested NMEPT's audited financial information, but upon receipt of such information, Chen refused to pay Nalco. As a result, Nalco brought suit against Chen in the Circuit Court of DuPage County, Illinois, for breach of the Indemnification Agreement. The case was removed to this Court based on diversity jurisdiction.

Following removal, Chen answered the Complaint with affirmative defenses and twelve counterclaims. Count I of the Counterclaims asserts that Nalco induced Chen fraudulently into signing the Indemnification Agreement. Count II claims that Mobotec breached the 2010 AOA by deciding unilaterally not to complete an $8 million

project. Counts III and IV assert claims against Nalco for tortious interference with a contract and a business relationship for inducing Mobotec to breach the 2010 AOA. Counts V and VI assert that Nalco and Mobotec participated in schemes to defraud Chen through various misrepresentations. Counts VII and VIII claim that Nalco and Mobotec violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq.*, by making various false representations to Chen. Counts IX-XII of the Counterclaims assert various causes of action under Chinese law, including breach of shareholder rights and infringement of property rights.

The Nalco entities move to dismiss Counts I, V, VI, VII and VIII of Chen's counterclaims (the "Fraud Counterclaims") pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). Additionally, the Nalco entities move to dismiss Counts II, III, IV, IX, X, XI and XII of the counterclaims (the "Non-Fraud Counterclaims") under the doctrine of *forum non conveniens*.

## II.  ANALYSIS

**A.  Motion to Dismiss the Fraud Counterclaims [ECF No. 20]**

The Nalco entities argue dismissal of the Fraud Counterclaims is warranted pursuant to Rules 9(b) and 12(b)(6). They claim the Fraud Counterclaims do not meet Rule 9(b)'s heightened pleading standard and fail to identify false statements of material fact under Rule 12(b)(6). Chen disputes such contentions, maintaining he provided adequate detail regarding Nalco's fraudulent conduct. The Nalco

entities also challenge Chen's standing to assert claims under the Illinois Consumer Fraud Act, which Chen also disputes.

Federal Rule of Civil Procedure 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). A plaintiff must state the "identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994). Furthermore, fraud claims must allege sufficiently the defendant's fraudulent intent. *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co. of Chicago*, 927 F.2d 988, 992 (7th Cir. 1991). Simple allegations of fraud, conspiracy, averments to conditions of mind, or referrals to a scheme are too conclusory to satisfy the requirements of Rule 9(b). *Flynn v. Merrick*, 881 F.2d 446, 449 (7th Cir. 1989).

Under Rule 12(b)(6), a motion to dismiss is permitted when a plaintiff fails to state a claim upon which relief can be granted. *E.E.O.C. v. Concentra Health Servs. Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). When considering dismissal under Rule 12(b)(6), the Court must take all well pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012). To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain enough facts to state a claim for relief that is

plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Applying these standards to Chen's Fraud Counterclaims, it is clear that they cannot proceed.

### *1. Fraud Counterclaims Count I – Fraudulent Inducement (Against Nalco)*

In Count I, Chen asserts a fraudulent inducement claim against Nalco. To state a claim for fraudulent inducement under Illinois law, a plaintiff must allege: (1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance. *Simplex, Inc. v. Global Source One Int'l, Inc.*, No. 12-3101, 2012 U.S. Dist. LEXIS 119706 at \*6 (C.D. Ill. Aug. 23, 2012).

Chen bases his fraudulent inducement claim on representations he alleges that the Nalco entities made regarding NMEPT's ability to complete a project and obtain necessary funds to repay the Facility. Specifically, Chen alleges that "in 2005, [Mobotec] guaranteed Chen and Pingang it had the technology available" to achieve reductions in noxious gases at specific levels. Def.'s Answer & Ctrc. ¶ 6 at 12. He also claims that "in 2007 . . . Mobotec promised to Chen and Pingang that it had the capacity and the capability to meet the detailed technical specifications" for a project, which included the specific reductions in noxious gases. *Id.* ¶ 7 at 12. When Nalco

later acquired Mobotec, Chen claims that "the representatives of Nalco Company/Nalco Mobotec reaffirmed the guarantees." *Id.* ¶ 17 at 14. In 2008 and 2009, Chen alleges he obtained two contracts from a customer, Changchun Datang, that again required the specified noxious gas reductions. He claims he agreed to sign the Indemnification and Reimbursement Agreement because "Nalco Company and Nalco Mobotec had represented to Chen that they would continue to work on the projects described above and receive payments from them, which would be sufficient for NMEPT to repay the loan without the need to call on the Guaranty." *Id.* ¶ 35 at 18-19. Chen alleges that Nalco knew these representations "and other representations made by Nalco Company to Chen" were false, and intended them to induce Chen to sign the Indemnification and Reimbursement Agreement. *Id.* ¶ 49-50 at 26.

Chen's allegations lack the specificity required by Rule 9(b). They fail to give the necessary details as to "the who, what, when, where, and how" as to each misrepresentation. *See, Dileo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). For example, none of the above allegations identify anyone other than "Mobotec" or "Nalco" as being the source of the alleged misrepresentations. References to the name of a company as being the source of misrepresentation, without identifying the parties to them, is not enough to meet Rule 9(b)'s pleading standard. *See, Graue Mill Dev. Corp.*, 927 F.2d at 993 (finding allegations that company made fraudulent statements insufficient where complaint failed to mention "the individuals party to them"); *Pirelli Armstrong Tire Corp. v. Walgreen Co.*, No. 09 C

2046, 2009 U.S. Dist. LEXIS 77648 at *13-14 (N.D. Ill. Aug. 31, 2009) (alleging company adopted corporate policy of switching prescriptions, without identifying specific individuals who misrepresented the fact that company was switching dosage forms, failed to satisfy Rule 9(b)). Chen's lack of specificity with respect to the source, who Chen should presumably know since the misrepresentations were directed to him, renders his allegations inadequate. *See, Vicom, Inc.,* 20 F.3d at 777.

Chen also fails to provide anything more than the year in which the alleged fraudulent statements were made, which is insufficient when pleading the timing of a fraudulent statement. *See, U.S. ex rel. Ascher Bros. Co., Inc. v. Am. Home Assur. Co.*, 98 C 0995, 1999 U.S. Dist. LEXIS 13345 at *5 (N.D. Ill. Aug. 24, 1999) ("Rule 9(b) requires . . . specific dates and places of the alleged misrepresentations."). Nor does he provide the location of the alleged misrepresentations, or the means by which they were conveyed. Vague statements as to "representatives" of Nalco "reaffirming the guarantees," and allusions to "other representations made by Nalco to Chen" fail to inform the Court or Nalco as to what the actual statements were that he is claiming were fraudulent or the circumstances surrounding them. Def.'s Answer & Ctrc. ¶¶ 17, 49 at 14, 26, ECF No. 18.

Because Chen's Count I fails to satisfy the pleading requirements of Rule 9(b), it must be dismissed without prejudice.

### 2. Fraud Counterclaims Counts V and VI – Scheme to Defraud (Against Mobotec and Nalco)

Under Illinois law, there is no remedy for fraudulent promises unless they are part of a scheme to defraud. *J.H. Desnick v. Am. Broad. Companies, Inc.*, 44 F.3d 1345, 1354 (7th Cir. 1995). A scheme to defraud exists when a party makes a promise of performance, not intending to keep the promise but intending for another party to rely on it, and where the other party relies on it to his detriment. *Bower v. Jones*, 978 F.2d 1004, 1011 (7th Cir. 1992). "While it is unclear exactly what level of conduct constitutes a scheme, some 'elaborate artifice of fraud' or other 'particularly egregious' deception is required." *Ledonne v. Axa Equitable Life Ins. Co.*, 411 F.Supp.2d 957, 960 (N.D. Ill. 2006) (quoting *Desnick*, 44 F.3d at 1354-555). Courts have found massive, concerted efforts to deceive, as well as complicated schemes involving numerous related misrepresentations, sufficient to plead the scheme to defraud exception. *Id.* at 961 (discussing cases).

In Counts V and VI, Chen asserts separate claims against Mobotec and Nalco for participating in a scheme to defraud him. His grounds for Count V against Mobotec are (1) the alleged misrepresentations discussed above that NMEPT would be able to complete the Changchun Datang project successfully; and (2) that Mobotec failed to inform him during a September 2012 trip to a power plant that NMEPT had filed for bankruptcy. Count VI against Nalco adds the alleged misrepresentation from Nalco President David Flitman ("Flitman") that

Nalco's only interest was to see the joint venture grow and that Nalco would "always look out for the good" of NMEPT. Def.'s Answer & Ctrc. ¶21 at 15.

The parties spend a great deal of time arguing whether these allegations can form the basis of a fraud claim. For example, the Nalco entities argue, correctly, that Flitman's alleged statements are not misrepresentations of present or past events, but opinions or statements of future events that cannot form the basis of a fraudulent misrepresentation claim. *See, N. Am. Plywood Corp. v. Oshkosh Trunk & Luggage Co.*, 263 F.2d, 543, 545 (7th Cir. 1959). They also argue that the allegations about hiding NMEPT's bankruptcy from Chen should be asserted as a fraudulent concealment claim, or as a breach of contract claim. However, the question before the Court is not whether these allegations, standing individually, could assert separate causes of action, but whether in the aggregate they describe sufficiently an extensive scheme to defraud. The Court finds they do not.

First, the allegations lack the requisite specificity under Rule 9(b). As noted earlier, the statements regarding NMEPT's capability to complete projects successfully lack the necessary specificity. Chen's other allegations are similarly deficient, lacking specific information surrounding the alleged concealment of the bankruptcy or statements by Flitman regarding Nalco's interests in NMEPT. More problematic for Chen, however, is that his counterclaims fail to describe a plausible scheme to defraud.

First, Chen's alleged scheme would need to survive the purchase of Mobotec by Nalco, since Chen alleges the first misrepresentation occurred prior to the acquisition. According to Chen's allegations, the new Mobotec board members appointed by Nalco, and Nalco's president, all agreed after the acquisition to become part of the scheme to defraud initially set in motion by Mobotec. While possible, that is less plausible in light of Chen's allegations that Nalco elected to enter into the Facility and put its own money on the line for NMEPT. Such actions are contrary to a scheme to defraud. Finally, and perhaps most lethal to Chen's proposed scheme, is that he makes no plausible allegations as to why Nalco would go to such great lengths and expense to defraud him. His only alleged purpose for such a scheme is claiming that the misrepresentations "were made with the intention of depriving Chen of personal and financial investments he made in NMEPT." Def.'s Answer & Ctrc. ¶¶ 84, 96 at 31, 33. This vague statement gives no indication as to why the Nalco entities would perpetuate a fraud spanning years that culminated in driving NMEPT into bankruptcy and costing Nalco all of the money it invested in the joint venture. As pled, Chen's scheme to defraud counts are simply implausible, and do not appear to rise to the level of an "elaborate artifice of fraud." *See, LeDonne*, 411 F.Supp.2d at 962.

For the foregoing reasons, Chen's counterclaims fail to describe a plausible "elaborate artifice" or ruse, and as such, fail to state a claim. Thus, Counts V and VI are dismissed without prejudice.

### *3. Fraud Counterclaims Counts VII and VIII – Illinois Consumer Fraud and Deceptive Business Practices Act (Against Nalco and Mobotec)*

In Counts VII and VIII, Chen asserts claims under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq.* (the "ICFA"), against Nalco and Mobotec. The ICFA is designed to protect "consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair business practices." *See*, *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cit. 2010). A "consumer" is defined by the ICFA as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 Ill. Comp. Stat. 505/1(e). A non-consumer can acquire standing under the ICFA through the consumer nexus test. *Thrasher-Lyon v. Illinois Farmers Ins. Co.*, 861 F.Supp.2d 898, 911 (N.D. Ill. 2012). Under the test, "if a natural person . . . alleges conduct [that] involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns, that person has standing to sue under the [ICFA]." *Id*. at 912.

Chen claims in Counts VII and VIII that the Nalco entities violated the ICFA through various misrepresentations and the aforementioned scheme to defraud. As already discussed, Chen's fraud allegations fail to meet the specificity requirements of Rule 9(b), which is grounds alone to dismiss Counts VII and VIII. However, even if he had pled those allegations with the necessary specificity to

satisfy Rule 9(b), his ICFA counts would still fail. This is because Chen is neither a consumer as defined by the statute, nor does he satisfy the consumer nexus test.

As the Nalco entities point out, under Illinois law, disputes between businessmen, who are not consumers of each other's goods or services, do not fall within the ambit of the ICFA. *See, Century Universal Enters., Inc. v. Triana Dev. Corp.*, 510 N.E.2d 1260, 1270 (Ill. App. Ct. 1987). Since both parties shared an interest in NMEPT, this dispute is clearly between businessmen. Furthermore, to sustain a claim under the ICFA, a plaintiff must show the defendant engaged in deceptive practices in promoting its goods or services to the market in general. *See, Ohio Nat'l Life Assur. Corp. v. Davis,* No. 10 C 2386, 2010 U.S. Dist. LEXIS 101649 at *6 (N.D. Ill. Sept. 27, 2010). A single course of deceptive conduct by a defendant toward a plaintiff is not enough to allege a violation under the ICFA. *Id*. Chen's position that he meets the consumer-nexus test because he brought potential consumers to view Nalco's technology after NMEPT had filed for bankruptcy does not suffice. This is an alleged single course of deceptive conduct and did not affect the market in general. As such, the Court finds Chen lacks standing under the ICFA, and dismisses Counts VII and VIII with prejudice.

For the reasons stated above, the Nalco entities' Motion to Dismiss Chen's Fraud Counts is granted.

## B. Motion to Dismiss Pursuant to the Doctrine of *Forum Non Conveniens* [ECF No. 23]

The Nalco entities also move to dismiss Chen's Nonfraud Counterclaims (Counts II, III, IV, IX, X, XI and XII) pursuant to the doctrine of *forum non conveniens*. Chen's Nonfraud Counterclaims involve issues related to Nalco's original claims. Nalco contends that China is the appropriate forum for Chen's non-fraud counterclaims, despite the fact that it was Nalco that filed the underlying action initially in Illinois, the location of its principal place of business. The Nalco entities claim the private and public interests weigh in favor of litigating the claims in China. Chen disagrees, arguing that the Nalco entities have not met the high burden needed to demonstrate this Court is not the appropriate forum for these claims.

The plaintiff is the master of the complaint, which includes the right to choose where to bring suit. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 718 (7th Cir. 2002). Generally, a plaintiff's choice of forum should not be disturbed unless the balance of public and private interest factors favor the defendant strongly. *Clerides v. Boeing Co.*, 534 F.3d 623, 628 (7th Cir. 2008). However, the doctrine of *forum non conveniens* allows a federal district court to dismiss an action when another forum is the more appropriate and convenient place to decide the case. *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007). Dismissal under *forum non conveniens* results from a court's evaluation of a number of

considerations, most notably the convenience to the parties and the practical difficulties that would result from the case being tried in a certain locality. *Id.* at 429.

A court may dismiss a case under *forum non conveniens* when either: (1) plaintiff's chosen forum will result in vexation and oppression to the defendant, which far outweighs the plaintiff's convenience; or (2) when the chosen forum will present administrative and legal entanglements. *Kamel v. Hill-Rom Co., Inc.*, 108 F.3d 799, 802 (7th Cir. 1997). Such a determination is left to the sound discretion of a trial court. *Id*. However, this inquiry involves a two-part process. *Id*. First, a court must determine whether an adequate alternative forum exists. *Id*. This in itself is a two-step analysis: (1) all parties must be amenable to process and within the alternative forum's jurisdiction; and (2) the parties must not be deprived of any remedies or treated unfairly in the alternative forum. *Id.* at 802-03. Once this is established, the court must then balance the private and public factors arising out of the case. *Id.* at 803.

It is uncontested that both parties fall under the jurisdiction of the alternative forum, China. Additionally, the U.S. Supreme Court has held China to be an adequate forum to litigate tort and contract claims. *See, Sinochem*, 549 U.S. at 435. Thus, China is an adequate alternative forum. However, Chen challenges the Nalco entities' assertions that this Court is not a convenient forum. Chen argues that the Nalco entities failed to show they would suffer

- 15 -

inordinate private harm or that public interest favors a Chinese forum.

The private factors a court must consider include the relative ease of access to sources of proof, the availability and cost of obtaining attendance for willing and unwilling witnesses and other such practical problems that could lead to a costly and inefficient trial. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). The Nalco entities fail to carry their burden of showing that consideration of these factors merits dismissal of the counterclaims.

The Nalco entities claim that because NMEPT is a Chinese joint venture, "documents related to its governance and performance are located in China and largely written in Chinese." Sec. Mot. to Dismiss at 6, ECF No. 23. Yet, the entities failed to provide any indication of how many relevant documents were in China, or what percent of relevant documents were in China as opposed to Illinois. Given the ease of access to hard drives and electronic data storage, the Court has no reason to believe the Nalco entities would be overly burdened by producing such files in Illinois.

The Nalco entities note that all of NMEPT's major clients are located in China, and claim that any of them who would be called as witnesses to substantiate Chen's counterclaims are also located in China. Chen responds by identifying specifically seven current or former Nalco employees residing in the United States with whom he worked that he considers "key witnesses" from whom he will seek testimony. Dec. of D. Chen ¶ 13, ECF No. 27-1. It is clear that

both sides will suffer an inconvenience with respect to witnesses being located in foreign jurisdictions regardless of which forum entertains the counterclaims. However, it is the Nalco entities' burden to show that convenience of the witnesses is so substantial as to require dismissal of the case, and they failed to do so.

Public factors to consider include local interests in the litigation, administrative difficulties involving court congestion and the appropriateness in having the trial of a diversity case in a forum that is familiar with law that governs the case. *Kamel*, 108 F.3d at 803. Nalco is correct in asserting residents of China have an interest in NMEPT's work, given its focus on China's air quality. However, Nalco's primary place of business is in Illinois. Undoubtedly, the residents of Illinois have an interest in the business of a company with a strong presence in the state.

The other public interest factors do little to help Nalco's cause. The fact that Chinese law applies to four of Chen's claims is of little consequence. Just as China is an adequate forum to adjudicate U.S. tort and contract law, United States courts are more than capable of settling claims arising under Chinese law. *See, CYBERsitter, LLC v. People's Republic of China*, CV 10-38-JST SHX, 2010 U.S. Dist. LEXIS 128345 at *25 (C.D. Cal. Nov. 19, 2010) ("federal district courts regularly interpret and apply foreign laws, including Chinese . . . laws"). Furthermore, "the need to apply foreign law . . . is not alone sufficient to warrant dismissal when a balancing of all relevant factors shows that the plaintiff's chosen

forum is appropriate." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 260 n. 29 (1981).

Ultimately, Chen's counterclaims stem from Nalco's original claims, which Nalco filed in Illinois. Due to the fact that the Nalco entities have not met the high burden needed for dismissal under *forum non conveniens*, judicial economy is preserved by keeping Chen's counterclaims before this Court. Thus, this Court denies the Nalco entities' Motion to Dismiss pursuant to the doctrine of *forum non conveniens*.

### IV. CONCLUSION

For the reasons stated herein, the Court rules as follows:

1. Grants the Nalco entities' Motion to Dismiss Counts I, V, VI, VII and VIII of the Amended Counterclaim [ECF No. 20]. Counts I, V, VI and VII are dismissed without prejudice. Counts VII and VIII are dismissed with prejudice.

2. Denies the Nalco entities Motion to Dismiss Counts II, III, IV, IX, X, XI and XII of the Amended Counterclaim [ECF No. 23].

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Date: August 22, 2013