**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **NALCO COMPANY,**<br><br>　　　　　　　Plaintiff,<br><br>　　　v.<br><br>**DAVID T. CHEN,**<br><br>　　　　　　　Defendant. | Case No. 12 C 9931<br><br>Hon. Harry D. Leinenweber |

**MEMORANDUM OPINION AND ORDER**

**I.　BACKGROUND**

The Plaintiff Nalco Company ("Plaintiff" or "Nalco") and the Defendant David T. Chen ("Defendant" or "Chen") were engaged in a Chinese joint venture Nalco Mobotec Environment Protection Technology (Shanghai) Co., Ltd. ("NMEPT"). The purpose of NMEPT was to improve air quality in china. At all times relevant Nalco was the owner of a 55% interest in NMEPT and Chen owned a 40% interest. Nalco also controlled the Board of Directors. In late 2009 it became apparent that NMEPT needed additional funds in order to carry out its existing contracts and to be able to enter into new ones. As a result NMEPT sought a $5 million line of credit from Citibank. However, Citibank would not provide the line of credit needed unless Nalco provided a "parental guarantee." Nalco in turn requested that Chen, the holder of a 40% interest in NMEPT, agree to indemnify it in an amount equal to Chen's interest in NMEPT in the event Nalco was forced to pay under the guaranty.

Chen agreed to do so and executed an Indemnity Agreement with Nalco on January 26, 2010. The date of the execution of the Nalco guarantee is in dispute. The document bares the date of January 4, 2010, although Nalco contends that it was actually executed at a somewhat later date, January 18, 2010 and was turned over to Citibank at an even later date. Nalco contends that it received Chen's verbal agreement to indemnify it prior to the January 18 date.

The Guarantee Agreement with Citibank was not to exceed RMB 30,000,000 and was to terminate on January 31, 2011. On December 18, 2011, Nalco executed an additional guarantee which obligated it to guarantee loan payments to NMEPT through November 30, 2012. The lending limits did not change but remained at RMB 30,000,000. Chen was not asked to execute an additional indemnity agreement. With the exception of some non-substantial changes, the only difference was the date of the guarantee and its expiration date. The exhibit to Chen's Indemnity Agreement was an undated version of the two guarantees which also did not contain a termination date. The underlying obligations of NMEPT were based on two "Short Term Revolving Facility Agreements" between Citibank and NMEPT, dated December 21, 2009 and March 15, 2011. Both of these agreements established a maximum amount of advances of RMB 30,000,000, and but for the dates and the carry-over provision, were virtually identical. The agreements also provided the

mechanics of requesting and obtaining advances, a method of determining interest, etc.

On January 9, 2012, as a result of failure to repay advances, Citibank served Nalco with a demand letter based on its guarantee. On January 13, 2012, Nalco made a payment of $5,111,480.68 to Citibank in response to the demand. On February 3, 2012, Nalco served on Chen a Demand for Reimbursement based on the Indemnity Agreement. Chen refused to pay and this litigation resulted.

Nalco's Complaint has two counts: a breach of contract claim and one for account stated. The parties have filed Cross-Motions for Summary Judgment.

## II. DISCUSSION

Nalco's claims are straight forward. It provided a parental guarantee for a joint venture in return for Chen's agreement to indemnify it for Chen's 40% interest in the joint venture. It was obligated to pay Citibank as a result of the failure of NMEPT to make payments due on the advances and Chen has not paid his share as he promised. Chen's position is slightly more complicated. First, he contends that Nalco, by executing its guarantee prior to Chen executing the Indemnity Agreement, means that his agreement fails for lack of consideration because Nalco was already obligated to repay advances. Second, the December 11, 2011 replacement guarantee by its terms voided the guarantee executed by Nalco in January 2010 and Nalco did not receive a second indemnity agreement from Chen. And, third, the Indemnity Agreement was obtained from

Chen by fraudulent means, *viz.,* deliberately not telling him that it had already obligated itself to the guarantee and further telling him that his signing the Indemnity Agreement was a precondition for Nalco's execution of the guarantee. Nalco's response is that the Indemnity Agreement was not limited to any specific guarantee and is not confined to the January 2010 guarantee but includes the later December 2011 Agreement. The Agreement was certainly supported by consideration because Nalco guaranteed payments to NMEPT which obviously benefitted Chen as well as was a detriment to Nalco. Nor did Nalco defraud Chen, who was an experienced businessman. It informed him of its guarantee and Chen did not ask to see the actual signed document. Thus, he did not conduct any diligence at all prior to deciding to executing the Indemnity Agreement.

The first contention, lack of consideration, is easily dealt with. Even if you only rely on the first Guaranty, which for sake of argument was effective prior to the Indemnity Agreement, there is clearly consideration. The Uncommitted Short Term Revolving Facility Agreement dated December 21, 2009, made an amount of money available to NMEPT but did not require it to draw anything down. Consequently, since Nalco controlled the Board and had Chen refused to sign the Indemnity Agreement, Nalco could see that NMEPT did not avail itself of some or any of the available funds under the facility. Chen seems to argue that by executing the guarantee, NMEPT was obligated to repay the entire facility amount at the time

the facility agreement was entered into. This is clearly not the case: NMEPT needed to apply for each and every drawdown by affirmative act. *See, Paragraph 4. Drawdown and Terms for Advances.* Nalco allowing NMEPT to make draws would constitute consideration under Illinois law. *Carter v. SSC Odin Operating Co., LLC,* 976 N.E.2d 344, 352 (Ill. 2012).

Chen's second contention: that his indemnity agreement did not apply to the March 15, 2011 Revolving Credit Facility Agreement because by its terms it "superceded in its entirety" the original facility agreement, is a closer question but not close enough. First, by the later agreement's terms "all amounts outstanding under the Original Facility Agreement . . . shall be deemed outstanding under this agreement." *See, Paragraph 12. Special Conditions.* Second, the Indemnity Agreement is not conditioned on a specific facility agreement. The Indemnity Agreement merely provides a form of the facility agreement that was unsigned and not specifically dated but did clearly show the maximum amount of the facility which was not increased under the succeeding facility agreement. As stated above, any amounts extended under the first agreement were carried over into the second agreement. The fact that the agreement was succeeded in its entirety was undoubtedly to insure that the total amount of the facility did not increase. And finally the Indemnity Agreement requires Chen to reimburse Nalco for 40% of "any payment" Nalco makes under the Guaranty.

Chen's third argument is that he was a victim of fraud. However, he must prove fraud by clear and convincing evidence. *JP Morgan Chase Bank, N.A. v. Asia Pulp & Paper Co., Ltd.,* 707 F.3d 853, 864 (7th Cir 2013). He must prove that (1) Nalco made a false statement of material fact, (2) knowing it was false or in reckless disregard of its truth or falsity, (3) with intent to induce Chen to enter into the Indemnity agreement, (4) Chen reasonably believed the false statements and acted in justifiable reliance on them, and (5) suffered damages as a result. Chen's claims that the false statement was that Nalco told him that it would not execute the guarantee if he, Chen, would not agree to indemnify Nalco. Nalco has produced some evidence that it did not turn the Guaranty over to Citibank until it had obtained assurance from Chen that he would agree to indemnity Nalco. Chen disputes the admissibility of the evidence but it still does not amount to fraud. As shown above, Nalco had the power to see the NMEPT did not draw on the facility without its permission so it is difficult to see how he was harmed.

The fact of the matter is that this case involves two joint venturers who were trying to keep the joint venture afloat. In order to do so, they needed an infusion of capital. They decided to do so and each joint venturer would be responsible for his equitable share of any losses that resulted. Nalco executed a Guaranty to Citibank making it responsible for 100% of any losses to Citibank based on the utilization of the facility. Chen had as much interest in keeping NMEPT alive as did Nalco. Consequently,

he agreed to cover his fair share of any losses.  Unfortunately, NMEPT did not make the payments and Nalco was forced to pay out $5,111,480.68 which it paid Citibank on January 13, 2012, more than four years ago.  Chen should have reimbursed Nalco his share which was $2,044,592.27.  He has not done so.

### III.  CONCLUSION

For the reasons stated herein, the Court rules as follows:

1. Nalco's Motion for Summary Judgment on Count I is granted.

2. Defendants's Cross-Motion for Summary Judgment is denied.

3. Count II of Nalco's Complaint is dismissed as moot.

4. Defendants's Counterclaim and affirmative defenses are dismissed.

5. Judgment is entered in favor of Nalco and against Chen in the amount of $2,044,592.27, plus interest at the rate of 9%.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　　　　
Harry D. Leinenweber, Judge
United States District Court

Date:6/4/2014