**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **NALCO COMPANY,**<br><br>        Plaintiff,<br><br>     v.<br><br>**DAVID T. CHEN,**<br><br>        Defendant.<br><hr><br>**DAVID T. CHEN,**<br><br>        Counter-Plaintiff,<br><br>     v.<br><br>**NALCO COMPANY and<br>NALCO MOBOTEC, INC.,**<br><br>        Counter-Defendants. | **Case No. 12 C 9931**<br><br>**Judge Harry D. Leinenweber** |

## MEMORANDUM OPINION AND ORDER

### I. BACKGROUND

The Plaintiff/Counter-Defendant, Nalco Company ("Nalco"), and the Defendant/Counter-Plaintiff, David Chen ("Chen"), were engaged in a Chinese joint venture, Nalco Mobotec Environment Protection Technology (Shanghai) Co., Ltd. ("NMEPT"), to sell environmental technology to Chinese companies. At relevant times, Nalco owned a 55% interest in NMEPT and Chen owned a 40%

interest. Nalco's interest was held in its wholly owned subsidiary, Counter-Defendant, Nalco Mobotec, Inc. ("NMI" and collectively, "the Nalco Entities"). Since NMI held a majority interest it also controlled a majority of the Board of Directors.

The relevant document that governed the operation of the joint venture was the 2010 Articles of Association ("AOA"). The AOA gave NMI control of the Board of Directors, but certain matters required a unanimous board vote, including borrowing money and filing for bankruptcy. Generally speaking, the respective roles were that Nalco would provide the technology and Chen along with the remaining shareholder Pinggang Hu ("Hu") would perform the sales function.

Chen and Hu secured projects for three main clients, including the one relevant to this case, Changchun Second Thermoelectricity Company of China Datant Corporation ("Changchun"). Unfortunately, by 2011, the joint venture was in economic distress. The cause of the distress is in dispute: Nalco contends that it was due to the tightening of the Chinese emissions regulations which made NMEPT's technology obsolete, while Chen contends, alternatively, that Nalco pulled its technology employees out of China and redeployed them to Europe or that the technology employees sat around and did not do the

work that were supposed to perform.  In any event, Nalco and Chen discussed potential options which included closing the venture through bankruptcy, NMI's preference, or placing the joint venture in a "dormant" position, which apparently would allow the shareholders to retain business licenses and registered trademarks, Chen's preference.

The parties were not able to reach an agreement to pursue either option.  While the negotiations between NMI and Chen over what to do with NMEPT were ongoing, because the joint venture had no new business and the Citibank facility had been fully drawn down, NMEPT was unable to pay its bills and creditors began to file suit against it.  NMEPT obtained a loan in the amount of $300,000 from another of Nalco's wholly owned subsidiaries, Nalco Suzhou ("Suzhou"), which was used to pay operational expenses while the negotiations between NMI and Chen continued.  However, NMEPT failed to obtain Board approval of the loan and Chen contends that he was not notified of the loan and that it did not have his approval.

The loan from Suzhou was fully expended by NMEPT but was not repaid.  As a result, Suzhou filed a Petition to place NMEPT into involuntary bankruptcy and NMEPT ceased to exist.  Chen contends that Suzhou was, in effect, a cat's paw of the Nalco Entities and did not make any independent decision either to

make the loan or to file the petition to place NMEPT into bankruptcy. Chen contends that the motives of the Nalco Entities for this loan scheme was to be able to place NMEPT into bankruptcy, which it could not do directly under the AOA without Chen's permission which he would not give. Chen contends that the bankruptcy caused him to lose his entire capital investment in NMEPT as well as its licenses and trademarks.

A second complaint of Chen is that NMI caused NMEPT to write off a $5 million receivable owed to it by Changchun. He contends that the Nalco Entities forced the NMEPT tech staff to stop working on the Changchun account after NMEPT had already collected millions of dollars in fees and while it was owed an additional five million dollars. This created the probability that Changchun would bring suit against NMEPT seeking damages for breach of contract to recover money it had already paid NMEPT. In the Counterclaim Chen filed in this case, he took the position that the Nalco Entities secretly agreed to write off the Changchun receivable without his knowledge and permission in violation of the AOA. In his briefing on the Motions for Summary Judgment however he now admits, not only that he knew about the write off, but that it was he who conducted the negotiation with Changchun leading to the write off in exchange for Changchun not filing a suit against NMEPT. He now contends

in his summary judgment briefing that the Nalco Entities, without his knowledge and permission, created the situation which gave Changchun the strong negotiating position forcing the write off, by the withdrawal of NMEPT's tech staff for redeployment to Europe. He also argues that he was told this by Changchun employees and further that the tech staff was not diligent in attending to its duties spending considerable amounts of time drinking in Chinese taverns.

As a result of the foregoing Chen has filed a Counterclaim which currently consists of eight counts: Count I, breach of contract under Illinois law against NMI; Count II, breach of the AOA against NMI; Count III, tortious interference with a contract against Nalco; Count IV, tortious interference with a business relationship against Nalco; Count IX, abuse of shareholder rights under the PRC company law against NMI; Count X, malicious conspiracy to injure a third party's interest under general principles of the civil law of the PRC against both Nalco and NMI; Count XI, infringement of property rights under PRC tort law against Nalco and NMI; and Count XII, breach of Shareholder Agreement under PRC contract law against NMI. Nalco and/or NMI have moved for summary judgment on each of the seven counts and Chen has moved for partial summary judgment on Counts IX and XII. These counts can be placed into two groups:

first, where Chen is seeking contract-like relief against NMI (Counts I, II, and XII) and, second, where Chen is seeking tort-like relief against Nalco and NMI (Counts III, IV, IX, X, and XI).

## II. **DISCUSSION**

### A. The Contract (Counts II and XII)

Chen agrees with NMI that Chinese law applies so Count I should be dismissed. Chen makes two arguments in favor of his breach of contract Counts II and XII, breach of the AOA and breach of the Shareholder Agreement, respectively. However, the AOA and the Shareholder Agreement are one and the same so they are clearly duplicative. The Nalco Entities have moved for summary judgment on both while Chen as moved for partial summary judgment only on Count XII. Chen's makes two claims against NMI under his breach of contract counts: that the write off of the Changchun receivable was taken unilaterally by Defendants without notice to him and without his approval, and second that, the Suzhou loan was likewise taken out without notice to him and without his approval, and both actions violate the AOA.

With respect to the write off claim, Chen's position, as presented in his summary judgment briefing, is now that it was not true that the write off was taken without his knowledge or permission, but it was NMI who created the situation which led

to the necessity of the write off by unilaterally withdrawing NMEPT's tech staff without his knowledge or approval which he claims was violative of the AOA. This is contrary to what he pled in his Counterclaim. *See,* Count II, Paragraphs 57 and 58. In fact Chen now admits that he personally conducted the negotiations with Changchun which resulted in the write off in order to avoid having Changchun sue to recover previous payments made to NMEPT. He further admits that the write off was in fact submitted to the Board for approval and that he actually voted in favor of the resolution, contrary to his allegations in Paragraph 59. Nalco responds to Chen's current claim by arguing that it is improper to attempt to amend the pleading in a response brief to a Motion for Summary Judgment, citing *Insolia v. Philip Morris Inc.,* 216 F.3d 596, 606-07 (7th Cir. 2000). Nalco is correct: *Insolia* along with other cases specifically state that "[a] plaintiff may not amend his complaint through arguments in this brief in opposition to a motion for summary judgment." That is precisely what Chen is seeking to do here.

However, even if Chen was allowed to amend his contractual counterclaims, this new argument does not find support in the record. The sum and substance of this claim that NMI failed to provide sufficient technical support is from his own two affidavits. In one of which he states: "NMI failed to provide

sufficient technical support to complete the contracts obtained by me and Pinggang, and as a result, NMEPT faced significant financial pressure by 2011," and "[o]n or about January 15, 2011, I also learned from Changchun Datant executives that Nalco had removed all of its engineers from the project thus stopping work on the project in early November 2010." Thus the only basis for his belief that NMI had removed technical support was the hearsay statements from unnamed Changchun Datant executives. If you remove from consideration the out-of-courts, not under oath statements of the Changchun executives, there is nothing to support Chen's statements in his two affidavits. Thus he has failed to establish fault on the part of NMI for the insolvency of NMEPT.

However, the second claim of Chen: that the taking out of the loan from Suzhou without board authority is more problematical for NMI. Specifically Article 5.2 of the AOA provides that decisions as to loans can only be made with the affirmative vote of all directors present at a board meeting. NMI admits that it overlooked this provision when the decision was made to borrow the $300,000.00 from Suzhou. Thus, Chen has shown that there was a violation of the AOA. However, under Chinese law, in addition to a valid contract and a breach, a plaintiff must establish damages that are causally related to

the breach.  It is very questionable whether Chen can do this. He claims that as a result of this breach, the Defendants found a way to put NMEPT into bankruptcy which caused him to lose his capital contribution and to repay a loan Chen made to the joint venture which apparently was used for operating capital. However, Chen would have to prove that the joint venture was capable of accumulating sufficient income to make these payments but for the bankruptcy.  He has certainly not brought forth any such evidence.  The only evidence is that the joint venture was a failure, was debt ridden, had no new business, and was not capable of continuing in business.  His own position was that rather than go into bankruptcy, NMEPT should be allowed to go dormant. Had it done so NMEPT allegedly could have retained rights to certain trademarks and licenses.  However these marks probably have some value so it cannot be said at this stage that Chen would not be able to prove any loss as a result of the bankruptcy.  So the Motion for Summary Judgment on Count II is denied to the extent that Chen may have a plausible claim for the loss of the trademarks.  Since Count XII is identical to Count II, *i.e.,* it is based on the AOA also, it is dismissed as surplusage.

## B. The Tort Courts (III, IV, IX, X and XI)

These Counts attempt to reach Nalco. Chen contends that the evidence shows that Nalco was calling the shots with respect to making the loan which ultimately led to the filing of the involuntary petition by Suzhou. The "proof" of this contention is, according to Chen, the lack of evidence to support that the three companies were acting independently. This is backwards: the person who contends, in effect, that the corporate shield should be pierced is the one who must come forward with evidence to justify such a finding. Here Chen has done no more than argue that the corporations were related and it was in the best interest of Nalco to have NMEPT placed into bankruptcy, so therefore it is responsible for Suzhou's filing the petition. This is insufficient under the laws in the United States and it appears to be insufficient under the law in China also. *See, Bing Ling Decl.* at ¶¶ 31-33. Accordingly, summary judgment is granted in favor of Nalco and NMI on the Tort Counts Nos. III, IV, IX, X and XI.

## C. Chen's Motion for Partial Summary Judgment

Since both Counts on which Chen seeks summary judgment (Counts IX and XII) are based on alleged violations of the AOA, the Court's ruling on the Defendants' Motions for Summary judgment will be full applicable here. The only viable claim left is the claim for damages as a result of the violation of

the AOA through the unauthorized loan from Souzou.  Accordingly, the Chen's Motion for Partial Summary Judgment is denied.

### III. CONCLUSION

For the reasons stated herein, Defendants' Motions for Summary Judgment on Counts I, III, IV, IX, X and XI are granted. The Defendants' Motion for Summary Judgment on Count II is denied.  Chen's Motion for Partial Summary Judgment is denied.

**IT IS SO ORDERED.**

                                      Harry D. Leinenweber, Judge
                                      United States District Court

Dated: 5/27/2015