**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **NALCO COMPANY,**<br><br>          Plaintiff,<br><br>     v.<br><br>**DAVID T. CHEN,**<br><br>          Defendant.<br><br>----<br><br>**DAVID T. CHEN,**<br><br>     Counter-Plaintiff,<br><br>     v.<br><br>**NALCO COMPANY and NALCO MOBOTEC, INC.,**<br><br>     Counter-Defendants. | Case No.  12 C 9931<br><br>Judge Harry D. Leinenweber |

### MEMORANDUM OPINION AND ORDER

This case was commenced by Nalco Company (Nalco) in 2012 to collect from David T. Chen money owed to it based on an indemnity agreement signed by Chen. Chen responded by filing an answer, affirmative defenses and 12 counterclaims. In 2014, Nalco obtained summary judgment against Chen on its claim [ECF No. 61] in the amount of $2,944,592.27, plus interest at the rate of 9%. The 12 counterclaims were all resolved in Nalco's favor in 2015 either by court ruling [ECF No. 120] or Chen's

concession. Chen took an appeal but dismissed it prior to briefing. A short time after dismissing his appeal, Chen filed suit against Nalco and Mobotec, LLC (previously known as Nalco Mobotec, Inc., and Nalco Mobotec, LLC) in China based on the same or similar claims that were decided against him in this case. Nalco now moves for an injunction to prevent and restrain Chen from pursuing his Chinese law suit based on *res judicata* principles.

By way of brief background, in 2005 Chen formed a joint venture under Chinese law with Mobotec USA, Inc. to manufacture technology to improve air quality in China. In late 2007 Nalco acquired Mobotec USA and its name was changed that year to Nalco Mobotec, Inc. The joint venture's name was changed at the same time to Nalco Mobotec Environmental Protection Technology (Shanghai) Co. ("NMEPT"). In 2010, at Nalco's request and with Chen's agreement, Nalco was given appointment power and the right to cast a deciding vote in board meetings.

Unfortunately, in 2011 the joint venture was in economic distress. In an attempt to right the ship, NMEPT, with Chen's approval obtained a line of credit from Citibank which was guaranteed by Nalco. Chen in turn agreed to indemnify Nalco in the event it was forced to pay under the guaranty. The joint venture was unable to repay the advances made under the line of

credit and Nalco was forced to make payment. Nalco in turn demanded that Chen pay his proportional share pursuant to the indemnity agreement. He failed to do so which led to the filing of this case.

The cause of the distress was disputed: Nalco contended that tightening of Chinese emission regulations made NMEPT's technology obsolete, while Chen contended that it was caused by Nalco's failure to provide sufficient technology support. The parties further disputed the course that was to be taken: Nalco preferred placing NMEPT into bankruptcy while Chen preferred placing the joint venture into a "dormant" position, which apparently would allow the shareholders to retain business licenses and registered trademarks. During negotiations and without Chen's agreement, NMEPT borrowed $300,000.00 from Nalco's wholly-owned subsidiary Nalco Suzhou ("Suzhou") to pay operational expenses. The loan was obtained without board approval and specifically without Chen's approval. The loan was not repaid. As a result, Suzhou filed a petition to place NMEPT into involuntary bankruptcy which caused NMEPT to cease to exist. Chen contended that the loan from Suzhou was part of a scheme on Nalco's part to have NMEPT placed into bankruptcy which it could not do without Chen's approval. Chen's 12-count counterclaim was based on his take of the above.

Chen's current Chinese lawsuit [ECF No. 143-1] contends that the Defendants Nalco and Mobotec LLC breached their contractual and statutory obligations owed to Chen and infringed on Chen's rights as a shareholder of NMEPT.  His specific contentions are that Defendants breached the obligation of good faith by breaking a promise to provide technical support to NMEPT, abused his rights as a shareholder by refusing the "dormancy" plan Chen requested, borrowed money from an affiliated company without board authorization, dismissed employees causing NMEPT to discontinue operations, carried out a first bankruptcy liquidation petition without Chen's consent, carried out a second bankruptcy petition by using the loan from the affiliated company, and failed to fulfill its duty of diligence and care and loyalty regarding whether the technology could be used in China.

*Res judicata,* or claim preclusion, applies to bar a second suit in federal court when there exists:  (1) an identity of the causes of actions; (2) an identity of the parties or their privies; and (3) a final judgment on the merits.  If these three elements are satisfied, claim preclusion "bars not only those issues which were actually decided in a prior suit, but also all issues which could have been raised in that action."  A claim has an "identity" with a previously litigated matter if it

emerges from the same "core of operative facts" as the earlier action. *Brzostowski v. Laidlaw Waste Systems, Inc.*, 49 F.3d 337, 339 (7th Cir. 1995). Chen argues that res judicata does not apply because the parties are not the same and the counterclaims and the China pleadings are not identical. He bases his first contention on the fact that the Defendant in the Chinese case is not Nalco Mobotec, Inc., but rather Mobotec LLC. He also contends that the claims are not identical because Nalco did not supply expert opinion on the Chinese law so as to demonstrate their similarity.

With regard to the identity of parties, Chen is clearly wrong. According to the record, Nalco Mobotec LLC became Mobotec, LLC by Certificate of Amendment dated December 9, 2013 [ECF No. 147-1]. Thus Mobotec, LLC is the current name of Nalco Mobotec LLC. A name change does not create a new entity. *In re Modern Textile, Inc.*, 739 F.2d 308, 311 (8th Cir. 1984).

As far as the core of operative facts is concerned no expert opinion is necessary because Chen has merely re-filed his Counterclaims, which were based on Chinese law with some slight change in verbiage, in the Chinese court. A little history will add some weight to this conclusion. Nalco, back in 2013, sought to have the Chinese counterclaims dismissed under the doctrine of *forum non conveniens* so that they would be refiled and tried

in China. Chen objected by arguing that his Chinese law counterclaims all "stem from Nalco's original claims, which Nalco filed in Illinois." The court denied the *forum non conveniens* motions on this basis.

As pointed out in *Kratville v. Runyon,* 90 F.3d 195, 198 (7th Cir. 1996), claim preclusion "bars not only those issues which were actually decided in a prior suit, but also all issues which could have been raised in that action." Chen's counterclaims and his Chinese litigation are clearly based on Nalco's alleged fraudulent mistreatment of him as a shareholder, the failure to furnish sufficient technical support to NMEPT, the failure to place NMEPT in dormancy, placing NMEPT in bankruptcy, and borrowing money from a Nalco wholly-owned subsidiary without his approval in order to justify an involuntary bankruptcy. These claims were and are all couched in terms of breach of contract and tort. Even if Chen could show that there were substantial differences between his counterclaims and the claims in his Chinese lawsuit, because they obviously arise out of the same operative set of facts, any such "new" claims could and should have been litigated in this proceeding. Thus, they would be barred by *res judicata* in any event.

The final argument made by Chen is that the Chinese Court should be the place to seek application of claim preclusion, not here in the Northern District of Illinois. However, a federal court's power to enjoin a party from litigation in another country is well established. *Affymax, Inc. v. Johnson & Johnson,* 420 F.Supp.2d 876, 883 (N.D. Ill. 2006). Nalco must make an initial showing that the issuance of the injunction is needed to prevent "gratuitously duplicative" and "vexatious or oppressive" foreign litigation. *Allendale Mutual Insurance Co. v. Bull Data Systems, Inc.,* 10 F.3d 425, 431 (7th Cir. 1993). A showing, such as here, that the foreign litigation is completely duplicative of the U.S. counterclaims satisfies the gratuitously duplicative requirement. The fact that Nalco did obtain a judgment on the operative facts of the counterclaims from which Chen took an appeal that he later dismissed days prior to filing of his Chinese law suit, makes litigating in China vexatious.

The final consideration as to whether to enjoin Chen from litigating in China is whether the injunction should be denied based on international comity. *Allendale,* at 431. This is Chen's burden. *Id.* He has made no such showing and it is hard to see how he could. He opted to litigate his claims under Chinese law here in the United States and objected to having them heard in China. He lost the claims here in the United States and he now seeks to relitigate them in China. Why China

would care that its court system is relieved of having to hear one more lawsuit, when neither the government nor a government official is involved, defies reason.

Accordingly, the Court issues an injunction restraining Chen from litigating against Nalco and Nalco Mobotec, LLC. (now known as Mobotec, LLC) in China Court and orders him to dismiss the litigation presently pending in Shanghai No. 1 Intermediate People's Court, Case No. (2015) HYZMS(S) CZ No. S88.

**IT IS SO ORDERED.**

                                        _____
                                        Harry D. Leinenweber, Judge
                                        United States District Court

Dated:6/10/2016