**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **NALCO COMPANY,** | |
| Plaintiff, | |
| v. | **Case No. 12 C 9931** |
| **DAVID T. CHEN,** | **Judge Harry D. Leinenweber** |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Nalco Company moves for entry of an order [ECF No. 206] directing Defendant David T. Chen to turn over monies held in his foreign accounts sufficient to satisfy the over two million dollar judgment [ECF No. 62] that Chen yet owes to Nalco. Plaintiff further moves for an extension of the Citation to Discover Assets as to Chen. For the reasons stated herein, the Court grants both requests.

### I. BACKGROUND

This opinion presumes familiarity with this Court's summary judgment ruling [ECF No. 120], which ably summarizes much of the background of this case. In brief: Nalco and Chen engaged in a joint venture to sell environmental technology to Chinese companies. When, in late 2009, it became apparent that the joint venture required additional funding to stay afloat, the venture sought a $5 million dollar line of credit from Citibank. Citibank only agreed to provide the requested credit after Nalco provided a guarantee, a guarantee for which Chen executed an indemnification and reimbursement agreement,

pledging to indemnify the venture in an amount equal to Chen's interest if Nalco were forced to pay. By early 2012, the worst had happened. The venture failed to repay advances, and Citibank called in its guarantee. Nalco paid Citibank and then demanded that Chen reimburse Nalco as promised. He refused.

Nalco sued Chen, and on June 4, 2014, this Court granted summary judgment for Nalco based on the indemnification agreement and entered judgment in Nalco's favor in the amount of $2,044,592.27 plus 9% interest accruing from the time the sum became due under the agreement. (ECF Nos. 61, 62.) Thereafter, the Court reinstated Chen's Counterclaims [ECF No. 77], and the parties litigated those issues anew; the Court eventually granted Nalco summary judgment on those Counterclaims, however, and thereafter reinstated the two million dollar judgment. (Order, Oct. 20, 2015, ECF No. 130.) The judgment became final and enforceable fourteen days later, after Chen failed within that period to post bond or obtain a stay of judgment as permitted under Federal Rule of Civil Procedure 62 and as explicitly mentioned by the Court's Order (Order, ECF No. 130.) On November 17, 2015, the clerk issued a citation to discover Chen's assets. (ECF No. 132.)

The citation directed Chen to do two key things: (1) appear before the Court on December 1, 2015 to be examined regarding his assets susceptible to the October 20, 2015 judgment; and (2) produce all financial records concerning his property and income. (Citation, Ex. 1 to Nalco's Mot. for Rule to Show Cause, ECF 140-1.) Chen

ignored the first of these mandates and did not appear for examination on December 1, 2015. Nalco thereafter sought and received the Court's intervention [ECF No. 145], and Chen eventually appeared for deposition on June 2, 2016. As for the latter mandate, Chen has still — some two years later — not fully complied.

The crux of Chen's noncompliance with the citation concerns his foreign assets. Chen admits that as of June 2016, he had a savings account with the Bank of China, an investment in China Gas Industries Investment Holdings, Ltd. ("CGII") worth approximately $15 million, and a salary from CGII of about $50,000 a year. (Chen's Resp. at 2, ECF No. 208 (citing Ex. A, 6/2/16 Chen Dep. Tr. at 18-19, 27, 31, 34-35, 40, 65-67).) Despite owning these properties, Chen did not produce the citation-required documentation for any of them. Indeed, he asserted in July 2016 that the *only* responsive document he had was an "account summary" he would request from the Bank of China regarding his holdings there. (*See,* Chen's Resp. at 3.) Then Chen did not produce that summary either, apparently because he "determined he did not want to." *Id.*

On November 9, 2016, the Court ordered Chen to produce his Bank of China account statements (among other yet-withheld documents). (ECF No. 181.) Still, Chen refused to comply. The Court accordingly held Chen in contempt and fined him $500/day to accrue until he produced the documents as ordered. (ECF No. 187.) To date, Chen has still not produced these documents.

## II. **DISCUSSION**

Nalco filed the Motion now at bar on August 2, 2017, seeking an order directing Chen to turn over his foreign assets, including those held in three foreign accounts that Nalco learned about through citation discovery (namely, an HSBC Hong Kong account ending in -6142 and two Bank of China accounts ending in -2956 and -0161). Second, Nalco requests a third extension of the citation. Chen argues the Court may not order the first and should not order the latter. The Court disagrees on both fronts and grants Nalco the relief it seeks in its Motion.

**A. Nalco's Motion for Turnover of Chen's Foreign Assets**

Nalco seeks a turnover order commanding Chen to do what he should have done back when this Court's judgment for Nalco became final and enforceable in October 2015: cough up the money he owes. But Chen says his assets in China are safe. He says the Court has no power to order turnover of his foreign-held assets. He says "this case is finished." (Chen's Resp. at 1.) He is mistaken.

In post-judgment proceedings such as these, Federal Rule of Civil Procedure 69(a) instructs district courts to follow the law of supplementary proceedings of the state in which they sit. FED. R. CIV. P. 69(a); *Laborers' Pension Fund v. Pavement Maint., Inc.*, 542 F.3d 189, 191 (7th Cir. 2008). In Illinois, that statute is 735 ILCS § 5/2-1402. Illinois Supreme Court Rule 277 describes that statute's mechanics. ILL. R. S. CT. 277. Subsection (f) is squarely at issue here:

> A proceeding under this rule continues until terminated by motion of the judgment creditor, order of the court, or satisfaction of the judgment, but terminates automatically 6 months from the date of (1) the respondent's first personal appearance pursuant to the citation or (2) the respondent's first personal appearance pursuant to subsequent process issued to enforce the citation, whichever is sooner. The court may, however, grant extensions beyond the 6 months, as justice may require. Orders for the payment of money continue in effect notwithstanding the termination of the proceedings until the judgment is satisfied or the court orders otherwise.

ILL. R. S. CT. 277(f).

The parties have two main squabbles over this rule. The first concerns whether Rule 277 eliminates the Court's jurisdiction. The second concerns whether, as a procedural matter, the Court may enter a turnover order even if the citation has lapsed. The first squabble can be silenced quickly. There is no jurisdictional issue here. The Seventh Circuit has held explicitly that Rule 277 has no effect on a district court's subject matter jurisdiction, which is determined by the facts that existed when the suit was filed. *Laborers' Pension Fund,* 542 F.3d at 194 (citing *Olympia Express, Inc. v. Linee Aeree Italiane, S.P.A.,* 509 F.3d 347, 349 (7th Cir. 2007)) (citation omitted). This Court sat in diversity jurisdiction when this case began, and it retains that jurisdiction now. (*See,* Mem. Op. and Order, Aug. 22, 2013, at 3, ECF No. 33.)

As to the second squabble: Rule 277's procedural impositions upon the Court do not offer Chen any succor. Chen argues that when the citation expired on August 2, 2017, the Court's power to order turnover evaporated. (Chen's Resp. at 8.) Chen accordingly maintains

that the Court cannot enter the requested turnover order until Nalco moves to reopen supplementary proceedings in accordance with Rule 277(a). (Chen's Resp. at 8.) Case law demonstrates otherwise. *See, e.g.*, *W. Bend Mutual Ins. Co. v. Belmont State Corp.*, No. 09 C 354, 2010 WL 5419061, at *4-5 (N.D. Ill. Dec. 23, 2010) (finding that a motion for turnover made nine days before the citation expired would be timely even if the court had not extended the citation date), *aff'd,* 712 F.3d 1030 (7th Cir. 2013). Here, Nalco moved for a turnover order before the citation expired. That closes the matter. Its Motion is timely, and the Court now grants it.

### B. Nalco's Motion to Extend the Citation

Nalco also moves the Court to extend the citation. The citation issued on November 17, 2015. (ECF No. 132.) Rule 277(f) imposes a six month expiration date for such citations, but that six month clock did not start to run until Chen sat for his deposition on June 2, 2016. *See,* ILL. R. S. CT. 277(f); *TM Ryan Co. v. 5350 S. Shore, L.L.C.*, 836 N.E.2d 803, 811 (Ill. App. Ct. 2005) (discussing same). The Court extended that timeline on two occasions: First, on Nalco's October 2016 Motion (ECF No. 178) after Chen steadfastly refused to produce his foreign asset documentation despite the mandate in the citation that he do so (ECF No. 181); second, on Nalco's May 2017 Motion (ECF No. 202), after Chen maintained his refusal to produce. (ECF No. 205.) After those extensions, the citation had an expiration date of August 2, 2017.

Now that Nalco again requests an extension, *Laborer's Pension Fund* once more provides helpful instruction. *Laborer's Pension Fund,* 542 F.3d 189. In that case, the Seventh Circuit reached all the way back to 1968 to endorse the state appellate court's "flexible approach" to Rule 277. *Id.* at 194 (citing with approval *Levine v. Pascal,* 236 N.E.2d 425, 431 (Ill. App. Ct. 1968) ("[T]he Supreme Court Rules are to be construed liberally and not literally . . . . While rules of court are to be obeyed, 'unswerving obedience' is not demanded where no material harm is done to any litigant.")). Contrary to Chen's proclamation that the Rules are rigid, they actually leave "the procedure to be followed in such proceedings largely to the judge's discretion." *Resolution Trust Corp. v. Ruggiero,* 994 F.2d 1221, 1226 (7th Cir. 1993); *accord,* Ill. Sup. Ct. R. 277(e) ("The court may at any time . . . control and direct the proceeding to the end that the rights and interests of all parties and persons involved may be protected and harassment avoided.").

The Court has discretion to extend the citation. But should it? Chen maintains that Nalco has used the citation proceedings to harass him and his family, and any extension of the citation would be used for more of the same. Specifically, Chen claims Nalco: delayed citation proceedings to drive up costs on the order of $500/day (consistent with the Court's above-mentioned contempt sanction); subjected Chen's wife and daughter to irrelevant depositions; and generally created uncertainty and costs for Chen. (*See,* Chen's Resp. at 10.) The Court is incredulous. True, Nalco waited until the

citation's expiration day to move for turnover. But moving sooner would not have freed Chen of his $500/day obligation, which he carries at this Court's direction for his abject refusal to produce his banking documents as ordered. If this daily accruing cost weighs on Chen, he can free himself of it at any time by complying with this Court's orders. As to the depositions: Nalco conducted those to discover Chen's assets and collect the judgment amount; there is nothing untoward there.

In short, the Court cannot agree that Chen has been harassed by the citation proceedings. This is not (as Chen suggests) a case like *Vance v. Dispatch Management Services,* No. 99 C 6631, 2002 WL 773840, at *3 (N.D. Ill. Apr. 26, 2002), in which the party subject to the citation "fully cooperated" by providing information "in the exact manner" requested, only to see the judgment creditor sit, inert, on the information provided. To the contrary, Chen has been resolutely uncooperative with the citation proceedings, refused to produce required documentation under pain of contempt, and to date has not paid out any of the more than two million dollars he owes Nalco. In these post-judgment proceedings, all harms Chen suffers flow from his conduct alone. As such, extending the citation will not do Chen any material harm, but it will preserve Nalco's ability to uncover and seek turnover of further foreign assets that Chen might have. Of course, if Chen complies with this order and turns over foreign assets sufficient to satisfy Nalco's judgment, the citation will lose its

utility and Chen may move to have the citation terminated even before the new expiration date the Court now orders.

### III. CONCLUSION

For the reasons stated herein, the Court orders Chen to turn over to Nalco all assets held in his foreign accounts, including in his HSBC Hong Kong bank account ending in -6142 and his Bank of China bank accounts ending in -2956 and -0161 in an amount sufficient to satisfy fully this Court's October 20, 2015 judgment. The Court further orders the Citation to Discover Assets continued to July 1, 2018.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　　　United States District Court

Dated: 2/2/2018